# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREGORY BROWN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-18-0701-BMJ |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff, Gregory Brown, seeks judicial review of the Social Security Administration's (SSA) denial of his application for supplemental security income (SSI). The parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c). The Commissioner has filed the Administrative Record (AR), [Doc. No. 12], and both parties have briefed their positions.[1] For the reasons set forth below, the Court affirms the Commissioner's decision.

**I.     Procedural Background**

On March 27, 2017, an Administrative Law Judge (ALJ) issued an unfavorable decision finding Plaintiff is not disabled and, therefore, not entitled to SSI. AR 12-29. The Appeals Counsel denied Plaintiff's request for review. *Id.* at 1-7. Accordingly, the ALJ's decision constitutes the Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff timely commenced this action for judicial review.

---

[1] Citations to the parties' briefs reference the Court's CM/ECF pagination.

## II. The ALJ's Decision

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (explaining process); *see also* 20 C.F.R. § 416.920. The ALJ first determined Plaintiff has not engaged in substantial gainful activity since September 12, 2015, his amended alleged onset date. AR 14.

At step two, the ALJ determined Plaintiff suffers from the following severe impairments: "lumbar spondylosis without myelopathy; dysthymic disorder; mild mental retardation, provisional; and, personality disorder." *Id*. Then, at step three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 19.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding that he:

> [can] perform medium work as defined in 20 CFR 416.967(c) except [he] can frequently lift/carry/push/pull 25 pounds, and occasionally lift/carry/push/pull 50 pounds. [Plaintiff] can sit for 6 hours out of an 8-hour workday and can stand/walk 6 hours out of an 8-hour workday. [He] cannot climb ladders, ropes, scaffolds. [He] can perform simple to detailed tasks with routine supervision. [He] can have no public contact. [He] can perform no customer service work. [He] is able to relate to supervisors and co-workers on a superficial work basis. [He] is able to adapt to work situations.

*Id.* at 22-23.

At step four, the ALJ determined Plaintiff had past relevant work as an air conditioner assembler and that he could return to that work as it is generally performed. *Id.* at 28. Alternatively, the ALJ found, at step five, that Plaintiff can also perform medium, unskilled work as a salvage laborer, a hand launder, and as a meat clerk, work existing in significant numbers in the national economy. *Id.* at 29. Therefore, the ALJ concluded that Plaintiff is not disabled for purposes of the Social Security Act. *Id*.

2

**III.     Claims Presented for Judicial Review**

Plaintiff alleges that: (1) the ALJ failed to assign any specific weight to two consultative examiners' opinions; (2) he cannot perform his past relevant work; (3) the ALJ erred in finding he had transferrable skills; and (4) the ALJ applied the wrong "grid rule." Pl.'s Br. at 6-13.

**IV.     Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). While the Court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, it does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted). However, "it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where based on the material the administrative law judge did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004).

**V.     Analysis**

    **A.     The ALJ's Failure to Assign any Weight to Two Consultative Examiners' Opinions**

In part, Plaintiff seeks reversal on grounds that the ALJ failed to specify what weight, if any, he gave to the opinions of Dr. Brandon Brown, M.D., and Dr. R. Keith Green, Ph.D. *See* Pl.'s Br. at 6-8. Relatedly, Plaintiff believes the ALJ ignored Dr. Brown's finding that Plaintiff had limited right and left knee flexion. *Id.* at 7. The Court agrees that, generally, an ALJ should make

it "clear to any subsequent reviewers the weight the adjudicator gave to the . . . medical opinion and the reason for that weight." *Allman v. Colvin*, 813 F.3d 1326, 1332 (10th Cir. 2016). However, any error here is harmless.

### 1. Dr. Brown

Dr. Brown examined Plaintiff once, at the SSA's request. AR 382-88. In relevant part, Dr. Brown assessed Plaintiff with chronic back and hand pain, and wrote:

> MUSCULOSKELETAL: [Plaintiff's] knee flexion on the left and right were both 100 out of 150. [S]houlder abduction on the left in supination was 100 out of 150. Shoulder abduction on the right in supination was 100 out of 150. Left forward shoulder elevation was 100 out of 150. [T]he right shoulder forward elevation was 100 out of 150. Otherwise[,] [o]n range of motion testing[,] the patient exhibited a normal back, neck, hip, knee, ankle, shoulder, elbow, wrist and hand range of motion bilaterally. The patient was able to effectively oppose the thumb to the fingertips, was able to manipulate small objects, and was able to effectively grasp tools such as a hammer. The range of motion testing of the lumbosacral spine and cervical spine were within normal limits.

*Id.* at 383. The ALJ discussed Dr. Brown's findings at length, *id.* at 16-17, noting that Dr. Brown found Plaintiff "exhibited a normal back, neck, hip, knee, ankle, shoulder, elbow, and wrists and hand range of motion, bilaterally." *Id.* at 17.

Plaintiff is correct that the ALJ failed to articulate that Plaintiff had experienced some limited range of motion in his knees and shoulders. But Dr. Brown did not actually assign any functional limitations based on this limited range of motion, and Plaintiff does not explain how the limited range of motion in his knees and shoulders should have translated into functional limitations in the RFC. *See* Pl.'s Br., *passim*; *see also, e.g., Giroux v. Berryhill*, No. CIV-17-139-STE, 2017 WL 5473730, at *3 (W.D. Okla. Nov. 14, 2017) (unpublished memorandum op. and order) (rejecting allegation that the ALJ ignored the physician's opinion because the physician did not articulate any functional limitations); *McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) ("[W]e agree with the magistrate judge that . . . the claimant has shown no error by the ALJ

4

because she does not identify any functional limitations that should have been included in the RFC assessment . . . ." (citation, quotation marks, and brackets omitted)); *Morgan v. Berryhill*, No. CIV-17-413-BMJ, 2018 WL 652335, at *6 (W.D. Okla. Jan. 31, 2018) (unpublished memorandum op. and order) (affirming the Commissioner's decision where plaintiff failed to identify "any additional functional limitations that the ALJ should have included" in the RFC). Furthermore, the ALJ gave controlling weight to Plaintiff's physician, Dr. Robert Remondino, M.D., who concluded that Plaintiff did not have any "permanent limitation or restriction," AR 27, and Plaintiff does not challenge that finding. *See* Pl.'s Br., *passim*; *see also Giroux*, 2017 WL 5473730, at *3 (finding no reversible error where physician did not assess any specific functional limitation and the RFC aligned with the state agency physicians' opinions, to whom the ALJ gave great weight).

Relatedly, while Plaintiff is also correct that the ALJ did not specifically assign any weight to Dr. Brown's opinion, a common-sense reading makes clear that he did not reject it. *See, e.g., Armijo v. Astrue*, 385 F. App'x 789, 795 (10th Cir. 2010) (finding the ALJ's treatment of the physician's opinion, though not "explicitly" stated, was "implicit in his decision"); *Maxwell v. Astrue*, 268 F. App'x 807, 810-11 (10th Cir. 2008) (noting that while it "would have been preferable" for the ALJ to specifically discuss the weight he gave the medical opinion, no reversal is required when it is clear he did not reject the opinion). Accordingly, the Court finds no ground for reversal.

### 2. Dr. Green

Dr. Green, a clinical and forensic psychologist, also examined Plaintiff once. AR 375-380. In sum, Dr. Green found:

> [Plaintiff's] [a]ttention, concentration and pace were impaired. The ability to retain and carry out simple and detailed instructions was intact, though that for complex ones was impaired. Social relationships as described were limited and superficial,

> activities of daily living were constricted as well as positive for needing help from others.
>
> One would estimate the severity of impairment of functional psychological capacity for work to be [m]ild to [m]oderate.
>
> [Plaintiff] is not considered to be capable of handling his own finances responsibly.

*Id.* at 377.

Again, Plaintiff alleges that the ALJ erred in failing to assign Dr. Green's opinion any weight. *See* Pl.'s Br. at 8. But the ALJ discussed Dr. Green's findings and opinions, AR 15-16, and then found Plaintiff capable of only performing "simple to detailed tasks with routine supervision," and relating "to supervisors and co-workers on a superficial work basis." *Id.* at 22. The ALJ also determined Plaintiff could have "no public contact" and "no customer service work." *Id.* at 22-23. Thus, it is clear the ALJ incorporated Dr. Green's opinions into the RFC, despite failing to articulate the weight he gave the opinions. *See Armijo*, 385 F. App'x at 795. So, again, the Court finds no grounds for reversal in the ALJ's treatment of Dr. Green's opinion.

### 3. Summary

Preferably, the ALJ would have articulated the specific weight he gave to Drs. Brown and Green's opinions; however, the Court finds that any error is harmless. The ALJ clearly did not reject either medical opinion and Plaintiff fails to establish that either medical provider articulated functional limitations which the ALJ omitted from the RFC.

### B. The ALJ's Finding that Plaintiff can Perform His Past Work

At step four, the ALJ found Plaintiff could perform his past work as an air conditioner assembler, as it is performed generally. AR 28. Plaintiff alleges two errors in this finding. First, he claims the ALJ "ignored" evidence that Plaintiff lost his air conditioner assembler job because he had "slow pace" and the vocational expert (VE) testified that if an individual's pace were slowed

6

"by 25% then . . . all jobs were eliminated." Pl.'s Br. at 9 (*citing* AR 65). Second, Plaintiff alleges reversible error because his past work requires a reasoning level three based on the DOT description. *See* Pl.'s Br. at 8 (*citing* DOT § 827.684-010). Plaintiff alleges this is incompatible with his RFC limitation to "simple to detailed tasks." *Id.* at 8-9.

On Plaintiff's first argument, the Court finds no error. The ALJ found Plaintiff's subjective allegations to be inconsistent, AR 26, and he fails to challenge that finding. *See* Pl.'s Br., *passim* Moreover, Plaintiff cites absolutely no evidence in the record to support a finding that his pace and production would be "slowed by 25%." *Id.* The Court will not scour the record to find such evidence. *See Effinger v. Callahan*, 1997 WL 446724, at *2 (10th Cir. 1997) (holding that the Court "will not comb through the record where counsel has not provided specific references tied to an argument").

The Court need not address Plaintiff's second argument, because the ALJ alternatively (and properly) found Plaintiff could perform other work existing in the national economy. *See infra* at 8-12. Thus, any error the Court found would be harmless.[2] *See Best-Willie v. Colvin*, 514 F. App'x 728, 738 (10th Cir. 2013) ("any legal error at step four is harmless in view of the ALJ's alternate finding at step five").

---

[2] As described in the DOT, reasoning level three requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DOT § 827.684-010. As Plaintiff argues, this Court has frequently followed *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005), where the Tenth Circuit found that an RFC limiting a claimant to "simple and routine work tasks" appeared inconsistent with jobs requiring a reasoning level of three. *Id.* at 1176. Here, however, Plaintiff was not limited to "simple and routine" work; instead, the ALJ found he should could perform a range – from simple to detailed – work. AR 22. It is unclear whether *Hackett* would apply under these circumstances. As noted above, the Court need not answer this question.

## C. The ALJ's Finding that Plaintiff had Transferrable Skills

Moving to step five, the ALJ found Plaintiff had "acquired work skills from past relevant work that are transferrable to other occupations . . ." AR 28. The ALJ stated:

> The [VE] was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as [Plaintiff], and which require skills acquired in [Plaintiff's] past relevant work but no additional skills. The [VE] responded and testified that representative occupations such an individual could perform include medium, unskilled work as a salvage laborer . . ., a hand launder . . ., and as a meat clerk . . . .

*Id.* at 29.

Plaintiff challenges this finding on grounds that the VE did not actually testify that Plaintiff's acquired skills were "transferrable" and "unskilled jobs cannot also be jobs with transferable skills." Pl.'s Br. at 11-12.[3] The Court again finds no reversible error.

The VE testified Plaintiff's past relevant work was generally performed as "medium, with an SVP of 3, semiskilled," and that he had "acquired" skills involving "electrical and mechanical, fabricating, installing, and repairing." *Id.* at 60-61. The ALJ then asked the VE to assume a hypothetical person with Plaintiff's same age, "past relevant work," and RFC, and the VE testified that person could perform the jobs of salvage laborer, hand launderer, and meat clerk. *Id.* at 61-62. The ALJ and VE then began discussing a hypothetical question involving a person who could only perform "light" work, and the VE said Plaintiff's skills would not be transferrable. *Id.* The following exchange then took place:

> [ALJ] And you identified transferrable skills. Right?

---

[3] Plaintiff also complains that the VE testified that "the job of air conditioner assembly had no skills which were transferable to light work because this work was quite specific." Pl.'s Br. at 10-11 (*citing* AR 64). But this argument is immaterial, as Plaintiff's RFC is for medium work. AR 22.

8

[VE]  No.

[ALJ]  Yes, you did.

[VE]  I identified the skills that they acquired from their prior work --

[ALJ]  I understand --

[VE]  -- before the hypothetical.

[ALJ]  Well, no, you identified transferable work skills.

[VE]  Those were the skills that are acquired and may be transferable, but when you give the hypothetical --

[ALJ]  Right, okay.

[VE]  -- it has to be based on the hypothetical.

*Id.* at 63.

While the Court agrees this colloquy is not the model of clarity, the VE clearly identified Plaintiff's acquired skills and was prepared to testify as to whether they would be transferable, given the hypothetical. Then based on that hypothetical, the VE found that Plaintiff could perform other unskilled work in the national economy with his age, past work skills, and RFC. *See id.* at 62-63. Based on this, the ALJ reasonably interpreted the VE's testimony as saying Plaintiff has transferable skills and the Court will not disturb that interpretation. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("We may not 'displace the agency's choice between two fairly conflicting views, even [if] the court would justifiably have made a different choice had the matter been before it de novo.'" (citation and internal brackets omitted)).

Perhaps more importantly (and addressing Plaintiff's conclusory assertion that "unskilled jobs cannot also be jobs with transferable skills" Pl.'s Br. at 12), the Court finds the transferability of skills is irrelevant here. If Plaintiff had an RFC for sedentary or light work, his argument could

have merit. *See* 20 C.F.R. § 416.968(d)(4) ("If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s)."). Here, however, the ALJ determined Plaintiff could perform medium work. AR 22. So, "the transferability of skills is not an issue." *Spoon v. Berryhill*, No. CIV-18-580-D, 2019 WL 1234343, at *5 (W.D. Okla. Feb. 28, 2019) (unpublished report and recommendation), *adopted*, 2019 WL 1234339 (W.D. Okla. Mar. 15, 2019) (unpublished district court order); *see also Fogg v. Colvin*, No. 13-CV-353-TLW, 2015 WL 631242, at *4 (N.D. Okla. Feb. 12, 2015) (unpublished op. and order) ("The referenced regulation says 'if you are of advanced age and you have a severe impairment(s) *that limits you to sedentary or light work*, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work.' The Court interprets the regulations discussed above to mean that since plaintiff is able to perform unskilled work at the medium level and above, skill transferability is not a factor that would render him disabled." (citations and internal brackets and ellipsis omitted; emphasis in original)), *aff'd*, 622 F. App'x 767 (10th Cir. 2015).

In sum, the Court finds that reversal is not warranted on this ground.

**D.    The ALJ's Grid Application**

The ALJ found that Plaintiff "was 53 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed." AR 28. The ALJ cited the correct age, but Plaintiff alleges that she failed to recognize that he had amended his application date and was thus actually a person of "advanced age." Pl.'s Br. at 12. The Commissioner agrees

10

the ALJ erred, but argues the classification was harmless. *See* Def.'s Br. at 20. The Court agrees with the Commissioner.

The ALJ used the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, (the grids), as a framework for her disability determination. The grids are intended to help ALJs make uniform, efficient decisions about the types and numbers of jobs existing in the national economy for certain classes of claimants. *See Heckler v. Campbell*, 461 U.S. 458, 468 (1983). The grids apply, however, "only when they describe a claimant's abilities and limitations accurately." *Id.* at 462 n. 5; *see also Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

Here, the ALJ found that Plaintiff could perform medium work, was closely approaching advanced age, had a high school education, and had transferable skills. AR 28-29. The Rule the ALJ applied – § 203.23 – supported a finding of "not disabled." *Id.*; *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2 § 203.23. Because Plaintiff had additional non-exertional limitations, the ALJ continued to determine whether there were jobs in the national economy Plaintiff could perform with such limitations. AR 28-29. Finding there were jobs available in the national economy Plaintiff could perform, the ALJ found Plaintiff was not disabled. *Id.*

The Commissioner agrees that the ALJ should have instead examined § 203.16, which applies to individuals capable of performing medium work, who are of advanced age, and have a high school education and transferable skills. *See* Def.'s Br. at 20; *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2 § 203.16. However, the error is harmless because under Rule 203.16, Plaintiff would still be found "not disabled." *Id.* at § 203.16. And, because he had other non-exertional limitations, the ALJ would have still turned to the VE for testimony on whether he could perform jobs in the national economy. The Court therefore finds no reversible error in the ALJ's misapplication of the grids. *See Miles v. Berryhill*, No. CIV-16-1229-CG, 2018 WL 1255761, at

*6 (W.D. Okla. Mar. 12, 2018) (unpublished op. and order) (finding any error in the ALJ's misapplication of the grids was harmless where the proper application would not have directed a finding of disabled").

## VI. Conclusion

The Court finds the ALJ's alleged errors to be harmless, and therefore, the decision of the Commissioner is AFFIRMED.

ENTERED this 10th day of April, 2019.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE